Good morning, Mr. Spivak, you're reserved two minutes for rebuttal, you can begin whenever you're ready. Yes, John. Good morning, John. My name is Lawrence Spivak. I represent the petitioners, Segundo Ortega-Garcia and Zahra Younayari. This case involves the application of the standard of judicial review for the exceptional and extremely unusual hardship for the cancellation and removal applications. Our position is that the agency erred in failing to consider the totality of the circumstances surrounding the two U.S. citizen children, in particular, the need of the older child for extensive mental health counseling due to a report. You don't have jurisdiction to consider fact questions, right? They are fact questions, but the fact that the court has jurisdiction to consider mixed questions. Well, we have jurisdiction to consider the application of law to fact, so that next question. But so before we get to that, the mixed questions, I mean, a lot of the arguments that you're putting forward are that the IGN has the facts wrong, right? Like you say, the children actually would lack access to care because there are long wait times in the home country. The petitioners would exhaust quickly whatever financial resources they could bring. They would experience severe difficulties in trying to start a business or engage in any employment in Ecuador. They had an income of $346,000 in 2015. I mean, these are all fact disputes with the IJ, right? We can't consider that. We can to the extent of whether it consists of the totality of the circumstances. Right, so we can consider the question if we're taking the facts as given and deciding whether the facts amount to extremely unusual hardship, right? Right, but we also... But we can't conclude that, you know, the IJ's determination that the income was $346,000 in 2015, whether that was right or wrong. That's just a fact. Right, but we also have to consider that the IJ overlooked the fact that the younger child doesn't speak any Spanish at all, that the older child was referred for... But they actually... The IJ made a factual finding that the children have trouble with Spanish, but not so much trouble that they wouldn't be able to adjust, right? That's also a factual finding. Right, but again... And so you're saying, well, the IJ should have concluded that the children actually have more trouble with Spanish than that, right? That's just a dispute over what the facts are. No, I don't think she even mentioned a decision where the younger child didn't speak Spanish at all, or that the older child was in need of psychiatric medication and had to have a referral for that. So basically, all her discussion consists of was that they're doing well in school, that the child was referred for counseling due to her thoughts of suicide, but not the fact that something more was needed than just mental health counseling. So there was never any discussion of all of these facts. They were overlooked completely. Well, the district court did make a finding about the children having trouble, but that it could be managed, right? Yes. And you're saying that that's wrong factually, because actually it couldn't be managed without more extensive medical care? No, it's wrong because they haven't considered the IJ and the H and the BI didn't consider the totality of the circumstances, which these are circumstances that she never even mentioned in her decision. So therefore, the wrong standard was applied. So sorry. So what standard do you think was applied that was wrong? Well, the standard that was applied was basically not looking at all the facts, overlooking facts, not mentioning them. No, we did say in that case, Mendez, that sometimes if you overlook some crucial piece of evidence that's sort of dispositive, it could be so important that it amounts to a legal error, right? Yes. But it can't be that if you overlook any little piece of evidence, it's automatically a legal error because that would just obliterate the jurisdictional bar in considering fact questions, right? Well, no. So when we apply that standard, it has to be kind of a rare circumstance where overlooking some piece of evidence is so dramatic that we can treat it as not even a fact question but as a legal question. Well, I think that the facts that were overlooked are certainly so significant that they may change the result of the case. And for that reason... But basically, you know, you're saying the children would have more trouble in the home country than the IJ concluded they would, right? Right. Plus the fact that the IJ... That's the dispute, right? Well, that's part of it, yes. That's the reason. Plus the fact that she didn't consider at all the fact that the children are older and they would have to rely on private education. There is no free college system in Ecuador, according to this record, only a free public system as to elementary and secondary school. These children are now ages 20 and 18 today. And therefore, they have to face the prospect of whether they actually be able to attend college in Ecuador at all. And the judge did not look at the facts... Well, the IJ does say that, you know, maybe the education isn't as good as it would be here, but that, you know, doesn't amount to an extremely unusual hardship. Well, they could in that, you know, once the family's resources run out, they may not even be able... The children may not be able to go to college at all because we're talking from the record that the college system appears to be private in Ecuador, not public. And then can I just ask what standard of review applies, right? So it's true, we have said that we might review the application of the extremely unusual mixed questions for clear error. But the Supreme Court just said that 1252b4b requires courts to draw the entirety of the agency's conclusions, both the underlying factual findings and the application of the INA to those findings for substantial evidence, right? That's Arias Orellana versus Bondi. So after the Supreme Court says that, that means that if we're applying a mixed question, we're going to look at the... We're going to apply the substantial evidence standard, right? Not necessarily. That's an asylum case. I'm not quite sure that it applies to a cancellation case. But the way it's written is just to say that's the standard we apply to mixed questions, isn't it? That... Yes. It would be... I believe that the clear error standard may still apply. I'd like the opportunity to brief that, if the court will allow it, since counsel just introduced this issue this morning in the memo. But... Okay. Is there... Is something at stake for that? Like, so do you think that you would prevail under a clear error standard but not under a substantial evidence standard? Yes, I believe because if the totality of the... If the proper totality of the circumstances standard had been applied, a different result would have been obtained in this case. I mean, you keep saying totality of the circumstances, but what you mean by that is just to say there was evidence in the record that the IJ didn't address in particular, right? Right. And erroneously found that... But it affects the hardship standard itself because the totality of the circumstances standard, in fact, asks us to consider the health of the children, the age, and their educational circumstances. And given all... I mean, is it not true that the IJ did make findings about the health of the children, their age, and educational circumstances? Do you just think the district court got... You know, made the wrong conclusions about those things? No, I don't think the substantial evidence supports their findings because if you look at the evidence, the fact is that a mandatory reporter reported that the older child was suicidal, that she was in need of constant attention. Okay. So you think the district court, you know, made a finding that underestimates the problems the children have. But let me just ask you this. If I were... If we were to take the factual findings for granted, to say what the IJ said about the level of problems the children had and all of that, that's fixed because we're not going to reconsider the factual findings. Do you have an argument that even given those findings, there was an error in concluding that that did not amount to extremely mutual hardship? Yes, because she failed to consider that the children had extreme difficulty on the facts that she had in adapting to life in Ecuador based on the hardships that they would face by virtue of the fact... But again, the IJ said their problems were not so severe they couldn't adapt. So that does seem like you're disputing the facts as opposed to the standard. Well, but I'm disputing the ultimate standard that's being applied here, which is that she's not considering everything that was... A, she's not considering everything that's in the record, and B, that she's exaggerating it based on the fact of the conviction. Those things don't... She's using the conviction against the children. Your totality of the evidence argument doesn't depend on whether it's clear error or substantial evidence, right? Whether it's clear error or substantial evidence is the standard. You always look at the totality of the evidence, right? Correct. All right. All right. Thank you. Thank you. Okay. We have from the government. Good morning, Your Honors. My name is Beau Stanton. I'm here today on behalf of the United States Attorney General. There's one overarching issue in this case, and that is to the extent that this Court has jurisdiction to review the denial of cancellation of removal in this case. This Court has already determined that it lacks jurisdiction over factual determinations. And as Your Honor has already noted, opposing counsel argues predominantly in his brief and reply brief challenging factual determinations. The immigration judge didn't consider strongly enough their mental health needs, their educational needs, their financial needs. These are all... But the Supreme Court... I mean, I keep saying, did make findings about their mental health needs and their educational needs, right? Absolutely, Your Honor. And you can find that on page 118, 119 of the record. And the Board of Immigration Appeals as well also considered those as well on page 3 and 4 of the record. And that's one thing. Like, this is an incredible decision, in my opinion, by the immigration judge. Immigration judge thoroughly goes through the evidence, pincites the evidence. Not only that, identifies the doctors, therapists, psychologists, even the teachers who provided these documents on behalf of Petitioner. And then looks at this evidence and then applies the correct legal standard. That's something that is missing in this case, that Petitioner has not alleged, is that there is a legal standard that was articulated by the agency in this case that was incorrect. They have never once alleged that there's a standard that they articulated incorrectly. But you're saying they applied the standard for extremely mutual hardship, which is circumstances beyond what you would normally expect from a relocation, right? Yes. Okay. Mr. Spivak says, well, okay, but I think there's a problem about they didn't do the totality of the circumstances and that's also a legal standard. What's your response to that? So there is precedent within the circuit that shows that if the agency overlooks probative material and relevant evidence, then that could rise to a legal error. But we don't have that in this case. We have the exact opposite. We have the immigration judge and the Board of Immigration Appeals collectively reviewing the evidence in its entirety bit by bit by bit. There's also precedent in the circuit that says that the immigration judge nor the Board of Immigration Appeals are required to write an exegesis or a dissertation.  So we do say that we're not going to, I mean, maybe these precedents work at some cross purposes, but as a general matter, we don't say that the I.J. failed to consider the evidence before him unless the record compellingly suggests that he did. But then there is this case where we say, well, sometimes the overlooking a piece of evidence could be so dramatic that we might treat it as a legal error. So to reconcile that, it has to at least be that it's a crucial piece of evidence that would change the outcome, right? Yes, Your Honor. And we don't have that in this case. What Petitioner's counsel identified is a language barrier, which is not uncommon when people are removed from the United States to another country. That is a regular feature to people who are removed from the United States. There are no educational opportunities, the medical options that are over in Ecuador. None of these indicates that these Petitioners and their children would face any sort of obstacles. The exact opposite. The financial assets this family has going back to Ecuador would be substantial. Nearly $800,000 is what this family would be returning to Ecuador on. They have an extensive family over there. The network over there pervades the country of Ecuador on top of that. And then if you look at the country conditions evidence that's provided in this case, it talks about how there is free education up to grade 12 here in Ecuador, that health care is more available in Ecuador, it appears, than in the United States. It is at a cost of the third of what it costs in the United States for similar medical procedures. Most importantly, there is no evidence in this case. It sounds pretty great, but, I mean, your argument doesn't depend on that, right? Well, no, Your Honor, you're right. Absolutely. Even if it's a little worse, it still wouldn't be extremely unusual hardship. Exactly, right? So these are all factual determinations that I'm getting into, right, when I'm getting into the weeds on, right? So we accept the factual determinations as found by the immigration judge. That is beyond the jurisdiction of this Court. So we look at these factual determinations that were made. Then we apply the legal standard, whether or not the harm is going to be substantially beyond what someone might face if they were removed from the United States. And if you look at the decisions here, the immigration judge laid out at the very beginning of its analysis the relevant standards, the relevant case law, cites it, and there is no dispute by the Petitioner here that the immigration judge applied the correct law, applied the correct cases. So after setting forth that law, then turns to the facts of the case. And this is after already making a credibility determination earlier in the decision. And so it's looking at those facts, applying the correct law, and then coming to an outcome. So if we just focus on the legal standard here that was applied, there's no evidence that there was any misapplication here. And in reviewing this decision, as you know, Your Honor, you actually now apply a substantial evidence review, not the clear error review as the Supreme Court has recently articulated. So this is a more deferential review that you apply to this case. So when you step back and see, is there substantial evidence in this case? Absolutely. I mean, the immigration judge made sure that we could find it later on appeal. Where does this evidence exist? He identifies it exactly in the record. We do, too, as well, in our opening brief. But we haven't decided that the issue is open of whether or not, as Judge Manasci pointed out, the recent Supreme Court decision, Urias-Rwanda affects our decision last year with Huambo-Yanez, right? That is correct, Your Honor. That is an open question before this Court still. One is asylum, one is cancellation, right? So while there are different removal reliefs in each one of these cases, the standard, the 1252, that is applied to both cases. Correct. So the Supreme Court says that 1252b-4b requires courts to review it for substantial evidence, and that is just the standard that applies to everything that arises on a petition for review, right? Out of what review? On a petition for review. Oh, yes, yes, exactly, yes. For mixed applications. Right. Yes. So there's nothing about it that says in this particular context you would apply the substantial evidence question to make a standard to mixed questions. They say the INA requires mixed questions be reviewed for substantial evidence. Exactly right, Your Honor. And I did submit a 28J letter this morning. I also brought hard copies for you as well and opposing counsel too, so I would be happy to give those to you at the appeal. Hard copies of what? Of the Supreme Court's decision? No, no. Of my 28J letter setting forth the decision. We have it, but I don't need it. Okay, cool. No problem. I just wanted to make sure I brought you hard copies as well, Your Honors. And so, you know, if the Court were to reach this issue, and it doesn't have to, because under either one of these standards, the clear error or the substantial evidence standard, the position of review should be denied. I guess your arguments would be, first, that there's no jurisdiction to reach it because these are fact disputes. And even if there were, the facts would not be clearly erroneous. And even if they were, they don't meet the substantial evidence standard. Or they would be, there is substantial evidence to support the conclusion. Yes, that is pretty much the thrust of our argument, yes. Initially, yes, the Court lacks jurisdiction. Really, over anything, that's been presented in this case by opposing counsel. Because, really, they only quibble with factual determinations. They try to, you know, break this into something more, but there is nothing more here. It really is. The Petitioner can allegedly, you know, maybe not be able to speak Spanish. But the immigration judge made that determination, what was on page 120 of the record, 192 to 120. And I identify, yes, it's definitely 120 in the record. So even the things that they claim that the immigration judge fails to do, even if you were to reach there and try to consider those, they're wrong. The immigration judge did consider the things that they allegedly have not. And I notice I'm out of time. And I can wrap up. Or if you have any other questions, I'd be happy to answer any other questions, Your Honors. I don't think there are any other questions. Thank you. Okay. Thank you so much. Please deny the petition for review. Mr. Spivak, you have two minutes. Yes. Thank you, Your Honors. Okay. So ultimately, the Court's application here is to look at the totality of the circumstances. We believe that the clear error standard should continue to be the applicable standard for review. Why would that be? Because basically the agency has to be, we would have to show that there's been something outstanding here that shows an error that requires something more than substantial evidence.  What? In other words, an error that goes beyond this, that is serious enough to change the results in the case. That's really all that's sufficient here for purposes of reversing the agency's  But if the review is under the same statutory provision, right? If we're looking at the, if the review is under the same statutory provision, why shouldn't the Supreme Court's decision control here as well? Well, because. Why does it matter what the form of relief being sought is if we're under the same section with respect to review? Because, again, in this case we have the fate of two U.S. citizen children at hand, and that's not an issue in an asylum case. And hardship, we believe, is a different analysis than whether someone has a well-founded fear of persecution based on country conditions. So I'd like the opportunity to submit a 28-J letter as well this week to that effect. If you want, you can submit it. I'll give you two days. That's fine. Thank you. Thank you. This is both a reserved decision. Have a good day.